UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

KAREN JOHN-CEDENO,

        Plaintiff,

    v.                                     **MEMORANDUM AND ORDER**
                                                22-CV-7959 (RPK) (MMH)

NEW YORK CITY HEALTH +
HOSPITALS CORPORATION,

        Defendant.

-----------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

*Pro se* plaintiff Karen John-Cedeno brings this negligence action against New York City Health + Hospitals Corporation ("NYCHHC") in connection with personal injuries she allegedly sustained from treatment at Kings County Hospital. Both parties move for summary judgment, and plaintiff moves for sanctions against defendant's attorneys. For the reasons explained below, defendant's motion for summary judgment is granted, and plaintiff's motions are denied.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements or relevant portions of the record and are undisputed unless otherwise noted.

On August 8, 2022, plaintiff was admitted to Kings County Hospital for neurological care. Second Am. Compl. ("SAC") ¶¶ 7–8 (Dkt. #35); Def.'s Rule 56.1 Statement ¶¶ 4–5(Dkt. #55). Plaintiff had been receiving neurological treatment from NYCHHC prior to admission. SAC ¶ 7; Def.'s Rule 56.1 Statement ¶ 3. Four days after admission, Dr. Josephe Archie Honorat, a resident physician, performed a lumbar puncture on plaintiff. SAC ¶ 8; Def.'s Ex. A2 at 2455 (Dkt. #42). A lumbar puncture or "spinal tap" is "conducted to measure the pressure of cerebrospinal fluid"—

1

a "clear fluid that surrounds the spine and brain"—and "to check for signs of infection, inflammation, or diseases." Decl. of Christopher G. Gharibo, M.D. ("Gharibo Decl.") ¶¶ 6 n.1, 47 (Dkt. #57); *see id.* ¶¶ 48–51 (describing the procedure). During the procedure, Dr. Honorat inserted a needle near plaintiff's spine as many as five times, "and on one of those occasions" plaintiff "felt the needle . . . deviate to the right of her spine causing immediate severe and excruciating pain." SAC ¶ 9; *see* Gharibo Decl. ¶ 54 n.9. The procedure was "unsuccessful[] as the needle encounter[ed] the bone," Def.'s Ex. A2 at 2455, and "was aborted," Def.'s Rule 56.1 Statement ¶ 8. *See* SAC ¶ 10.

Afterward, plaintiff "experience[d] feelings of numbness and tingling" in her back, spine, legs, and toes, SAC ¶ 11; *see* Def.'s Ex. A2 at 2455, as well as difficulty walking, *see* SAC ¶ 12. Plaintiff required a second lumbar puncture procedure, which was successfully performed by a different physician at Kings County Hospital. SAC ¶ 13; Def.'s Rule 56.1 Statement ¶ 11. Plaintiff continued to experience physical pain following the procedure, SAC ¶¶ 14–15, and "has had to undergo aggressive rehabilitation in order to walk," SAC ¶ 14. Plaintiff states that she "has been unable to concentrate" or "continue with her career path, due to the physical pain and mental anxiety" she claims resulted from the aborted lumbar puncture. SAC ¶¶ 15.

Medical records submitted by defendant reflect plaintiff's history of various medical conditions that predate the aborted lumber puncture, including epilepsy, seizures, chronic lower back pain, diabetes, and HIV. *See* Def.'s Ex. A2 at 2318–20, 2331. Those records also reflect that upon admission to Kings County Hospital on August 8, plaintiff reported sometimes feeling "wobbly . . . while walking." *Id.* at 2319. Plaintiff has not disputed the accuracy of these records.

2

Plaintiff filed this lawsuit in December 2022. *See* Compl. (Dkt. #1). In her operative complaint, she asserts a medical malpractice claim against NYCHHC on theories of negligence and *res ipsa loquitur*, seeking $20 million in damages. SAC ¶¶ 18–31.

Both parties have moved for summary judgment. Plaintiff argues in her motion that negligence is "obvious" because Dr. Honorat's lumbar puncture was aborted after the spinal needle "hit[] bone" and caused plaintiff pain and because a second lumbar puncture by a different doctor was successful. Pl.'s Mot. for Summ. J. 2–3 (Dkt. #36); *see id.* at 2–5. Plaintiff also moves for sanctions against defendant's attorneys for publicly filing portions of her medical record. Pl.'s Opp'n & Mot. for Sanctions 4–5 (Dkt # 58); *see* Def.'s Reply (Dkt. #59).

Defendant's cross-motion for summary judgment relies on the declaration of Dr. Christopher G. Gharibo. *See* Def.'s Mot. for Summ. J. (Dkt. #48). Dr. Gharibo was retained by defendant as an expert and "currently serve[s] as the Medical Director of Pain Medicine" at NYU Langone Health. Gharibo Decl. ¶¶ 2–3. Dr. Gharibo has "performed several thousand lumbar injections and punctures over the course of [his] career." *Id.* ¶ 40. He attests "to a reasonable degree of medical certainty" that the aborted lumbar puncture was "performed within accepted standards of practice." *Id.* ¶ 41. He notes that "hitting a bone structure" is "common," and is likely where the patient, like plaintiff, has a "degenerative disease of the spinal cord" which "impact[s] the ability of a doctor to perform a lumbar puncture." *Id.* ¶ 53. He also states that attempting the procedure five times before aborting it is not "improper," that patients "may feel a sudden sharp pain" during the procedure, and that patients "can experience headaches and extremity numbness" after the procedure. *Id.* ¶¶ 51, 54 n.9, 56.

Dr. Gharibo also attests that plaintiff's "current neurological complaints are not attributable to the aborted procedure." *Id.* ¶ 42. He cites medical records showing that prior to the procedure,

3

plaintiff reported "chronic upper and lower back issues," "burning pain" and "decreased sensation" in her extremities, and difficulty walking, and he notes that her diabetes and HIV "can cause peripheral neuropathy." *Id.* ¶¶ 58–60.  He concludes that plaintiff's "current complaints of pain, numbness and difficulty ambulating are solely due to [her] pre-existing conditions." *Id.* ¶ 59.

Defendant provided plaintiff with a notice pursuant to Local Rule 56.2, advising that under Federal Rule of Civil Procedure 56 she "must submit evidence, such as witness [affidavits] or documents, countering the facts asserted by the defendant and raising specific facts that support [her] claim." Local Rule 56.2 Notice to *Pro Se* Litigant (Dkt. #54).  The only evidence plaintiff submitted in her opposition to defendant's summary judgment motion is evidence that she did not use a walking aid before admission on August 8, 2022, but needed to use one after she was discharged.  *See* Pl.'s Resps. & Req. for Sanctions 2–4 (Dkt. #58).

Plaintiff subsequently filed a second motion for summary judgment without seeking leave from this Court to do so.  *See* Pl's Sec. Mot. for Summ. J. (Dkt. #63).  This new motion is largely identical to the first except that the new motion notified the Court that plaintiff had submitted "three affidavits from third parties who attest that when the plaintiff visited the Hospital for the first lumbar puncture procedure, she walked into the Defendant's hospital just fine and without any problems." *Id.* at 6.  Each affiant states that plaintiff "was walking fine and was able to conduct normal everyday tasks without pain and suffering" before the medical procedure, but that afterward, plaintiff began to use walking aids like canes and wheelchairs.  *See* Pl.'s Notice of Filing Exs. 001, 002, 003 (Dkt. #62).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue

4

of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and quotation marks omitted). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* (citation and quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant. *See ibid.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When parties cross-move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

A court "is ordinarily obligated to afford a special solicitude to *pro se* litigants . . . particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (quotation marks and citations omitted). The complaint of a *pro se* plaintiff must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quotation marks and citation omitted).

## DISCUSSION

Defendant's motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied. Plaintiff's motion for sanctions is also denied.

I.   **Summary Judgment**

   A.  **Legal Standard**

Plaintiff's negligence claim sounds in medical malpractice. *See Weiner v. Lenox Hill Hosp.*, 88 N.Y.2d 784, 788 (1996) ("[A] claim sounds in medical malpractice when the challenged conduct constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician." (quotation marks and citation omitted)). Under New York law, to establish a claim of medical malpractice, "a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995) (quotation marks and citation omitted). "New York law further provides that, 'except as to matters within the ordinary experience and knowledge of laymen, expert medical opinion evidence is required' to make out both of these elements." *Ibid.* (ellipsis omitted) (quoting *Fiore v. Galang*, 478 N.E.2d 188, 189 (N.Y. 1985)); *accord Vale v. United States*, 673 F. App'x 114, 116 (2d Cir. 2016).

A medical-malpractice plaintiff is thus required by New York law to submit expert evidence except in the "rare" case where breach is "so clear and obvious that it will be within the understanding of the ordinary layman," like where a "surgeon [has] left a needle inside the patient's body," "a dentist has pulled the wrong tooth," or "an unexplained injury has occurred to a part of the body remote from the site of the surgery." *Sitts v. United States*, 811 F.2d 736, 740 (2d Cir. 1987) (quotation marks and citation omitted). Even in such cases, "if the defendant can proffer any evidence to support the view that a proper standard of care was followed, the plaintiff cannot prevail without introducing expert medical testimony." *Ibid.* Moreover, even where the element of breach is "clear and obvious," "expert testimony may be required to prove . . . proximate cause." *Ibid.*

6

Likewise, once a defendant moving for summary judgment makes a *prima facie* showing that "he or she did not depart from good and accepted medical practice or that any departure did not proximately cause plaintiff's injuries," then "the burden shifts to plaintiff to rebut the *prima facie* showing via medical evidence." *Ducasse v. N.Y.C. Health & Hosps. Corp.*, 49 N.Y.S.3d 109, 111 (App. Div. 2017) (italics added) (quotation marks and citation omitted); *see Alvarez v. Prospect Hosp.*, 501 N.E.2d 572, 574 (N.Y. 1986).

These substantive standards apply equally in federal court under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *See id.* at 78 ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *see also Sitts*, 811 F.2d at 739–41; *Ongley v. St. Lukes Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46–47 (2d Cir. 2018); *Song v. Turtil*, No. 21-CV-2269 (VB), 2023 WL 2242771, at *7 (S.D.N.Y. Feb. 27, 2023).

### B. Application

Applying these principles, defendant's motion for summary judgment is granted, and plaintiff's motion is denied. The expert declaration of Dr. Gharibo explains in detail his conclusions "to a reasonable degree of medical certainty" that the aborted lumbar puncture was "performed within accepted standards of practice" and that plaintiff's "neurological complaints are not attributable to the aborted procedure." Gharibo Decl. ¶¶ 41–42. Defendant has thus made a *prima facie* showing on both elements of plaintiff's medical malpractice claim, placing the burden on plaintiff to rebut that showing "via medical evidence." *Ducasse*, 49 N.Y.S.3d at 111 (quotation marks and citation omitted). Plaintiff failed to do so in either her opposition to defendant's summary judgment motion or in her own summary judgment motions. She relies on the fact that Dr. Honorat's lumbar puncture was unsuccessful, after "hitting bone" and causing

7

plaintiff pain, and that a different doctor's subsequent lumbar puncture was successful. *See* Pl.'s Mot. for Summ. J. 2–5. But as Dr. Gharibo's declaration explains, "hitting a bone structure" is "common" during a properly performed lumbar puncture, Gharibo Decl. ¶ 53, as is the pain plaintiff states she experienced during and after the procedure, *see id.* ¶¶ 51, 54 n.9, 56. Because plaintiff has failed to produce "some statement of expert medical opinion" rebutting defendant's *prima facie* showing, *Alvarez*, 501 N.E.2d at 576, defendant is entitled to summary judgment.

## II.     Sanctions and Sealing

Plaintiff's motion for sanctions is denied, but the Court *sua sponte* directs that plaintiff's medical records be placed under seal.

Plaintiff argues that sanctions are warranted under Federal Rule of Civil Procedure 37 because portions of her medical record were filed on the public docket. *See* Pl.'s Opp'n & Mot. for Sanctions 4–5. Rule 37 "permits a court to sanction a party who deliberately fails to comply with a discovery order." *Aristidou v. Aviation Port Servs.*, LLC, No. 18-CV-4040 (RPK) (RER), 2021 WL 2471269, at *3 (E.D.N.Y. June 17, 2021) (citing Fed. R. Civ. P. 37(b)(2)(A)). Sanctions are not warranted under that rule here, because plaintiff identifies no discovery order that was violated by the filing of excerpts from her medical record. Accordingly, plaintiff's motion for sanctions is denied.

However, the Clerk of Court is directed to place the medical records attached to defendant's summary judgment motion under seal. *See* Def.'s Aff. in Supp. of Mot. for Summ. J. Exhibit A (1 of 3) (Dkt. #50); Def.'s Aff. in Supp. of Mot. for Summ. J. Exhibit A (2 of 3) (Dkt. #51); Def.'s Aff. in Supp. of Mot. for Summ. J. Exhibit A (3 of 3) (Dkt. #52); Def.'s Aff. in Supp. of Mot. for Summ. J. Exhibit B (Dkt. #53). "[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong

8

presumption of access attaches, under both the common law and the First Amendment." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016) (explaining that this presumption attaches to all documents "relevant to the performance of the judicial function and useful in the judicial process" (quoting *Lugosch*, 435 F.3d at 119)). To overcome this "stringent" standard, *Lugosch*, 435 F.3d at 124, "the proponent of sealing must demonstrate that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Bernstein*, 814 F.3d at 144 (quotation marks and citation omitted). But "courts in this circuit regularly allow medical records to be filed under seal, finding that parties have a strong privacy interest in their medical information." *Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 14-CV-476S, 2021 WL 4166628, at *1 (W.D.N.Y. Sept. 14, 2021) (collecting cases). So the Court finds sufficient reasons to rebut the presumption of access here.

## CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment and her motion for sanctions are denied. The Clerk of Court is respectfully directed to seal the summary judgment exhibits at docket entries 50, 51, 52, and 53, to enter judgment, and to close the case.

SO ORDERED.

      /s/ Rachel Kovner
      RACHEL P. KOVNER
      United States District Judge

Dated: August 22, 2025
      Brooklyn, New York